## Austin W. Wright and William W. Catlin, his Assignee, v. John Cudahy.

1. CONTRIBUTION—*Between Copartners.*—A bill for contribution by one partner against his copartner before he has paid his share of the firm debts, there being no firm assets, will not lie.

2. PARTNERSHIP—*Rights of Creditors—Equity—Jurisdiction.*—Creditors of a partnership may maintain a suit at law, obtain judgment against either partner or the firm, and satisfy the judgment out of the joint or private property of the partners, and there is no reason why a court should entertain a bill by one partner for the benefit of such creditors.

**Bill for Contribution.**—Appeal from the Circuit Court of Cook County; the Hon. MURRAY F. TULEY, Judge, presiding. Heard in this court at the March term, 1896. Affirmed. Opinion filed June 1, 1896.

### STATEMENT OF THE CASE.

This is a bill for contribution brought by Austin W. Wright and his assignee, W. W. Catlin, against John Cudahy, on account of a transaction in pork which culminated on August 31, 1893, and resulted in the failure of the complainant, Wright.

The complainant, Wright, and the respondent, Cudahy, were members of the Board of Trade during the spring and summer of 1893, and for a long time previous thereto. Some time in April, 1893, Wright conceived the idea of buying a large quantity of pork, to be delivered at various times up to August 1st.

In accordance with this plan, Wright commenced the purchase of pork about the first of April, and by the middle of the month had bought about 37,000 barrels at a price averaging about $17 or $18 a barrel. During the month of April, Wright had on hand about $300,000, all of it subject to immediate call.

Some time about the middle of April, he determined to invite Mr. Cudahy to join this deal, so that they would be better able to handle the amount of pork that he thought

desirable to buy in order to carry out his plan. Mr. Cudahy, after considering the matter for a day or two, gave his assent and thereupon it was agreed that each one should buy such pork as he saw fit, at any time and at any price, without regard to the other, and all of this should be kept for joint account.

The same kind of a deal had been run by these two parties the year before in short ribs.

Wright & Cudahy continued in this deal up to about the 31st day of May, at which time they had accumulated about 117,000 barrels of pork, worth in the neighborhood of $20 per barrel.

On the 31st day of May, or the day before, Mr. Cudahy came to Mr. Wright and informed him that his brothers, with whom he was interested in large business transactions, had objected seriously to his deal with Wright, and that the rumor of the joint transactions in pork was affecting the credit of the Cudahy brothers, and for this reason he desired to get out of the deal.

Up to this point there is no controversy between the complainants and defendant as to the facts of the case. Complainant Wright says that on this 31st day of May Mr. Cudahy requested Wright to let him out of the deal nominally, but at the same time it was agreed and understood that this was only for the purpose of satisfying Mr. Cudahy's brothers, and avoid their criticism, and that he should remain a real partner to the end of the transaction. On the other hand, Mr. Cudahy contends that on the said 31st day of May the partnership was actually dissolved, and that thereafter he had no interest whatever in the deal.

Immediately after the agreement on the 31st day of May, the various accounts, whether standing in the name of Cudahy or Wright & Cudahy, were transferred to Wright, and nominally almost all the matters were turned over to Wright's account. On the 1st day of August Mr. Wright was unable to meet the payments for the pork then to be delivered, and was obliged to suspend. On the same day Mr. Cudahy and several other large concerns on the board,

doing commission business, failed as well. This action was brought to enforce the liability of Mr. Cudahy as a partner in the transactions and compel an accounting between the parties.

The dispute between these parties, so far as the facts are concerned, is as to the nature of the arrangement made between Cudahy and Wright on the 31st day of May, after they had entered into this partnership agreement. Mr. Wright contends that there was no absolute dissolution of partnership, but that matters were to continue exactly the same so far as the parties were concerned until the deal was finally consummated. Mr. Cudahy contends that the dissolution was absolute at this date, and that thereafter no liability existed. The testimony of the two parties is contradictory.

S. S. Gregory and Darrow, Thomas & Thompson, attorneys for appellants.

W. J. Hynes and H. T. Gilbert, attorneys for appellee.

Mr. Justice Waterman delivered the opinion of the Court.

This is a bill by an alleged partner for contribution from his alleged copartner.

It is urged by counsel that it is also a bill for exoneration; that is, that by the payment of partnership debts by the defendant Cudahy, the complainant Wright may be relieved from the burden of debts now resting upon him. It can not be called or maintained as a bill for an accounting, as not only is there no dispute as to the accounts, but all the transactions concerning which the controversy is, were personally carried on by the complainant in his name, and ostensibly not as a partner, and the entire accounts were kept by Wright, and are in the possession of the complainants. The defendant is not asked to account for anything; he is asked, simply, to pay into the hands of a receiver, to be appointed, the amount of the unpaid indebtedness of the

alleged firm, viz.: the sum of $357,937.45, that the same may be distributed among such creditors.

The total loss upon the transactions described in the bill was $582,107.41, of which Wright, prior to his failure, paid........................................ $202,520.49
His assignee has since paid.................. 18,754.44
There was deducted from a certain check...... 2,895.03

Total amount paid by Wright............ $224,169.96
Leaving amount unpaid................ 357,937.45

Wright, according to his claim, should pay of the total loss $291,053.70; deduct $224,169.96; leaves $66,883.74 as the amount which, according to his claim, he ought, as between him and Cudahy, to pay.

We are in this case confronted with the question whether a bill of this kind can be maintained by a partner who has not paid his share of the firm indebtedness, there being no partnership assets.

We have been referred to no case, and we are not aware of any, in which such a bill has been entertained.

Courts sit for the redress of grievances, and they act only at the instance of those who have a right to insist that they shall.

What grievance of the complainants, or either of them, is shown by the bill filed in this cause, and what right have those who brought this bill to require the court to give to them redress?

The complainant, Wright, says that he has paid $224,169.96 of firm indebtedness, leaving $357,937.45 unpaid; which unpaid amount rests, a heavy burden, upon him, and which the defendant Cudahy should remove; but, if the allegations of the bill be true, the burden of the unpaid debts rests also upon Cudahy, and is to him as burdensome as it is to Wright. Wright does not offer to pay one-half of the firm indebtedness if Cudahy will pay the other half. It is not claimed that Cudahy owes Wright anything; the insistance is that Cudahy owes firm creditors a large sum, and does not pay them; a decree that Cudahy pay anything to Wright is not

asked.   Clearly, then, it is the firm creditors who alone have a right to complain; it is they alone to whom injustice is being done.   The bill is for the benefit of parties who do not ask for relief, who are not parties to the proceeding, and may never become so.   If the bill could be maintained for the benefit of firm creditors, it would amount to giving such creditors an opportunity to prove their claims in a court of equity, and deprive Cudahy of the right to deny the partnership, and, consequently, the existence of any claim against him in a court of law and before a jury.

If the allegations of the bill be true, each of the unpaid creditors may maintain a suit at law and obtain judgment against Cudahy.   Why, then, should a court of equity suffer Cudahy to be drawn before it for their benefit.   The creditors have only a right of action at law against the partners, on which they may obtain judgment, and then satisfy the judgment out of the joint or private property of the partners.   Ladd v. Griswold et al., 4 Gil. 25–37.

The rule as to the maintenance of a bill for contribution by a co-surety seems to afford a guide in such a case as this.

It is only a surety who has paid more than his proportion of the joint obligation who can maintain a bill for contribution by his co-surety.   Adams' Equity, 7th Am. Ed., 269; Brandt on Guaranty and Suretyship, Sec. 287; Lyttle v. Pope, 11 B. Monroe, 309; Van Patten v. Richardson, 68 Mo. 379; Ex parte Gifford, 6 Vesey, 805; Gross v. Davis, 87 Tenn. 226.

In Hodgson et al. v. Baldwin et al., 65 Ill. 532, 537, the court say:

" The first point made by plaintiffs in error is, that one partner, assuming this association to be partnership, can not, when the partnership funds are exhausted and it is still in debt, compel a copartner, by bill in chancery, to contribute toward the discharge of the joint indebtedness, the party suing not having himself paid his own ratable share of such debt.

Counsel seem to consider this a bill for contribution by one or more partners against their copartners, and has so

argued the case.   Was it such a bill, the authorities he has cited would sustain his position.   The doctrine is well settled, when two or more are jointly, or jointly and severally, bound to pay a certain sum of money, and one or more of them is compelled to pay the whole debt, or more than his or their share, those paying may recover from the delinquents the proportion they ought to pay.

This principle is quite familiar, and was recognized by this court in Johnson's Adm'rs v. Vaughn, *ante*, 425."

We are therefore of the opinion that Wright, not having paid his share of the alleged firm indebtedness, this bill can not be maintained.

The complainant Wright admits that it was given out to the world that the partnership between him and Cudahy had been dissolved, but he says that in fact there was no dissolution.   Upon the fact of a dissolution, as was represented, the burden rests upon him who declares that his representations were untrue.   The apparent is presumed to be the real until it is shown to be otherwise.   The presumption of dissolution is based upon the statement of each of the partners, that the firm had been dissolved.

The testimony before the chancellor was partly oral and partly by depositions; the finding of the court below comes to us, therefore, with the force and effect of the verdict of a jury.   We perceive in the evidence no sufficient reason for reversing the conclusion of the Circuit Court as to the facts, and its decree is affirmed.